UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 OCT 29 P 4: 21

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                         ) | CRIM. NO. 95-10355-RCL |
| ) | |
| RICHARD J. GEORGE          ) | |
|     Defendant              ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THE PETITION OF RICHARD J. GEORGE FOR WRIT OF ERROR CORAM NOBIS

This memorandum is not intended to present a fully briefed argument on the merits of the petition of Richard J. George, because such a memorandum is premature until the United States has had an opportunity to respond to the petition. Rather, the purpose of this memorandum is to set forth the authorities governing a petition of this type. Leave is sought to file a more comprehensive memorandum when and if the government responds.

I.  **BACKGROUND**

On December 15, 1995, petitioner appeared before the court, Lindsay, J., to waive indictment and plead guilty to a one count information charging a conspiracy to commit wire fraud in violation of 18 U.S.C. § 317, in the matter of United States v. Richard J. George, No. 95-10355-RCL. The government alleged that George, while employed as an assistant clerk-magistrate in the Cambridge District Court, provided blank search warrant forms to an

individual who had no legitimate use for such forms, thereby depriving his employer, the Commonwealth of Massachusetts, of his (George's) honest services. In its Rule 11 colloquy, the court advised petitioner of the third element of the offense that the government was required to prove;[1]

> And third, that at some time during the life of the conspiracy agreement or understanding, you knew the purpose of the conspiracy agreement or understanding, and then deliberately joined the conspiracy...

(Transcript of December 14, 1995 plea hearing, page 26, line 3).[2] Following the colloquy, the Assistant U.S. Attorney outlined the government's evidence. In relevant part, the AUSA stated:

> In giving such forms to Mr. Fosher and in failing to disclose to his employer, the Commonwealth, that he had done so, Mr. George knew that he was engaging in a scheme to defraud the Commonwealth of his honest services as First Assistant/Clerk Magistrate.

(Tr. I-29/19)

Having found that petitioner had entered his guilty plea competently, with full awareness of the charges and consequences of the plea, and that the plea was knowing and voluntary, and that the plea was "supported by an independent basis of fact contained in each of the essential elements of the offense charged," (Tr. I-30/17) the court accepted the plea and found petitioner guilty.

On January 29, 1996, petitioner appeared before the court for sentencing. The Presentence Report[3] before the court stated, at (20) that:

> There are no identifiable victims of the instant offense as the

---

[1] The Affidavit of Richard J. George in Support of Petition for Writ of Error Coram Nobis is incorporated in the within memorandum.
[2] The transcript of the December 14, 1995 plea hearing (identified as Tr. I) and of the January 29, 1996 sentencing hearing (identified as Tr. II) will be cited by page and line as "(Tr. I – p/l)." Both transcripts are appended to petitioner's affidavit as Exhibits B and C respectively.
[3] Appended to petitioner's affidavit as Exhibit D.

2

government has represented that it cannot prove by a preponderance of the evidence that the defendant knew that the warrants would be used to commit home invasions.

and at (26) that:

According to the government, it cannot prove by a preponderance of the evidence that the defendant knew that the warrants would be used to commit home invasions...

The court indicated that it was aware of the government's inability to prove that petitioner knew what the search warrants would be used for:

THE COURT: And let me just finish this. And a critical question pertaining to Mr. George's culpability whether he do – what it is these warrants are going to be used for and at this point, no one ever is satisfied with, the government cannot prove that he knew that these warrants were going to be used for some unlawful purpose.

(Tr. II-8/12)

The AUSA conceded the problem created by the petitioner's lack of knowledge regarding use of the search warrants:

First, that absent the acceptance of the plea, we do not believe that Mr. George, who has admitted that he committed this crime which he has been charged, would be able to be prosecuted. We do not believe that we could prosecute him without his guilty plea, either now or realistically at any time in the future.

(Tr. II-16/11)

The court acknowledged the government's problem of proof:

THE COURT: Well, all right. You are saying to me that you don't think you can prosecute him for this, for the crime which he is charged in this indictment and with respect to information that he may be able to give, but others, you wouldn't be able to get that. You don't know if you are going to get that information in any event come Monday morning or whenever the trial is going to be. He may stiff you Monday morning about this information, but you tell me you can't prosecute him anyway; is that right?

(Tr. II-17/9)

3

And the AUSA confirmed the court's understanding: "That is correct, Your Honor." (Tr. II-17/19).

Despite the government's concession that it would not be able to prove that petitioner knew what the search warrants would be used for, and despite their acknowledgement that they would not be able to prosecute the petitioner without his guilty plea, and although the court indicated that it was aware of the government's lack of evidence regarding petitioner's knowledge, the court nevertheless proceeded to impose sentence. Petitioner was sentenced to a committed sentence of 20 months, probation of 2 years, 200 hours community service, a $10,000 fine, and a $50 mandatory assessment. Petitioner self-surrendered at the federal prison facility at Schuykill, Pennsylvania on February 20, 1996 to commence his sentence. He remained at the facility at Schuykill, Pennsylvania until his transfer to a halfway house in Boston on April 23, 1997. He reported to the U.S. Probation Officer on April 24, 1997, and completed his two year term of supervised release on April 23, 1999.

## II. AVAILABILITY OF CORAM NOBIS RELIEF

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a district court is authorized to grant the common law writ of error coram nobis. ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law."); *United States v. Morgan*, 346 U.S. 502, 511 (1954) (holding that the enactment of 28 U.S.C. § 2255 did not supersede the availability of writ of coram nobis). The writ is available as a "remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."

*Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) The court is authorized to grant the writ, however, only "under circumstances compelling such action to achieve justice." *Morgan*, supra, 346 U.S. at 511. The writ is issued "to correct errors of fact unknown to the court at the time of the judgment, without fault of the defendant, which, if known, would probably have prevented the judgment." Id., 346 U.S. at 516.

In deciding whether to grant the writ, courts have used a three-part test: a petitioner must 1) explain his failure to seek relief from judgment earlier; 2) demonstrate continuing collateral consequences from the conviction; and 3) prove that the error is fundamental to the validity of the judgment. See *United States v. Sawyer*, 239 F.3d 31, 38 (1st Cir. 2001); *United States v. Barrett*, 178 F.3d 34, 56 n. 20 (1st Cir.1999); *United States v. Hager*, 993 F.2d 4, 5 (1st Cir. 1993); see also *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000).

### A.   Petitioner's Failure to Seek Relief from Judgment Earlier

Prior to pleading guilty, petitioner had retired on September 25, 1995, from his position as an assistant clerk-magistrate of the Cambridge District Court. His monthly retirement benefit of $1,424.91 commenced October 1, 1995 and continued without interruption until petitioner was notified by the State Board of Retirement in January, 2003, that his benefits were being suspended as of January 1, 2003, as a result of his federal conviction, pending a hearing before the State Board of Retirement. Said hearing had initially been deferred at petitioner's request pending the issuance of the decision by the Second Circuit Court of Appeals in United States v. Rybicki, Nos. 00-1043, 00-1044, 00-1052, 00-1055, and the hearing remains deferred pending the adjudication of the instant petition. Petitioner's pension benefits remain suspended to this date. Petitioner's attorney, Daniel J. O'Connell III, had died on September 23, 2002, and petitioner retained new counsel to investigate the status of his

pension. His new attorney, Atty. Bruce T. Macdonald, proceeded to gather information from: 1) the State Board of Retirement; 2) from Atty. O'Connell's files; and 3) and documents from the Federal Court, including transcripts of the plea and sentencing hearings. During this time, Atty. Macdonald informed petitioner of a potential problem with his guilty plea and also of the pending Rybicki case, which concerned the constitutionality of 18 U.S.C. § 1346. Rybicki had been re-argued, in banc, on October 16, 2002, on the issue of whether § 1346 is unconstitutional on its face. Atty. Macdonald indicated that petitioner should await the decision in Rybicki before proceeding in either the State Board of Retirement or to challenge his conviction in this court. The court decided Rybicki on December 29, 2003, holding in a 7 to 4 decision that the statute was constitutional. *United States v. Rybicki*, 354 F.3d 124 (2nd Cir. 2003), *cert. denied* 2004 LEXIS 5519 (October 4, 2004). On August 12, 2004, Atty. Macdonald obtained petitioner's entire case file from Atty. O'Connell's office.

It is submitted that petitioner has shown "sound reasons" for his delay in seeking coram nobis relief. *Morgan*, supra, 74 S.Ct. at 253 (1954) (requiring "sound reasons" for a petitioner's "failure to seek appropriate earlier relief"); *Telink, Inc. v. United States*, 24 F.3d 42, 47 (9th Cir. 1994) ("In requiring reasonable diligence at all times, our holding ensures a petitioner will not use an analogous limitations period as a safe haven for prejudicing the government, willfully delaying the assertion of his or her rights and then raising the claim after the inexcusable delay has impaired the government's ability to respond to the allegations or to proceed to retrial."); *United States v. Darnell*, 716 F2d. 479, 481 n. 5 (7th Cir. 1983) ("The doctrine of laches adequately protects against 'sandbagging' and ensures that coram nobis relief will not be granted where a petitioner's inexcusable delay in raising his claim has prejudiced

6

the government.").[4] Beyond the usual consequences of being a convicted felon, significant additional collateral consequences of petitioner's conviction did not emerge until the suspension of his pension benefits on January 1, 2003. His new attorney advised that he should await the decision of the Second Circuit in the Rybicki case before proceeding with a coram nobis petition.[5]

### B.  Continuing Collateral Consequences From the Conviction

As noted above, petitioner continued to receive his Trial Court pension during the course of his incarceration, after he was released from custody, and up until January 1, 2003, when he was notified that his pension benefits were being suspended as a result of his federal conviction, pending a hearing before the State Board of Retirement. That hearing has not yet taken place and the pension benefits remain suspended.

A petitioner seeking coram nobis relief must make a showing that he continues to suffer "significant collateral consequences" from the judgment. *Hager v. United States*, 993 F.2d 4, 5 (1st Cir. 1993). It will not be presumed "that the collateral consequences of a prior conviction are sufficiently substantial to demonstrate the 'compelling circumstances' that warrant coram nobis relief." *United States v. Dyer*, 136 F.3d 417, 429 (5th Cir. 1998)

One court has described the collateral consequences requirement of coram nobis as follows:

> Considering . . . systemic interests in finality, we have rejected coram nobis petitions except where there is a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm to the petitioner. Thus, the types of disabilities sufficient to justify coram nobis relief can be broken down into three elements.

---

[4] The government is not prejudiced by the delay because, as noted above, the Assistant U.S. Attorney indicated at the time of petitioner's sentencing that: "We do not believe that we could prosecute him without his guilty plea, either now or realistically at any time in the future."

[5] The *Rybicki* decision, and its relevance to the issues raised by this petition will be more fully developed at the time petitioner's comprehensive memorandum of law is submitted.

> First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past. Second, the disability must arise out of the erroneous conviction. Third, the potential harm to the petitioner must be more than incidental.

*United States v. Craig*, 907 F.2d 653, 658 (7th Cir. 1990), *cert. denied* 500 U.S. 917 (1991) (footnote omitted). That court has also referred to collateral consequences as "lingering civil disabilities." Id. at 657. See *United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) (identifying disabilities that are "unique to criminal convictions," such as loss of the rights to vote, hold occupational licenses, and bear arms). See also *Tapia Garcia v. INS.*, 237 F.3d 1216, 1218 (10th Cir. 2001) (alien's "inability to reenter and reside legally in the United States with his family is a collateral consequence of his deportation because it is clearly a concrete disadvantage imposed as a matter of law"); *Leitao v. Reno*, 311 F.3d 453, 456 (1st Cir. 2002) (same); United *States v. Foont*, 901 F.Supp. 729, 734 (S.D.N.Y. 1995) (a statute which bars defendant from reentering his profession presents just the kind of continuing legal consequence that justifies allowing a defendant to properly move a court to issue a coram nobis writ); *United States v. Osser*, 864 F.2d 1056, 1060 (3rd Cir. 1988) (assuming, without deciding, that loss of pension is a cognizable collateral consequence for coram nobis relief). Clearly, the loss of pension benefits as a result of the instant conviction is within the category of "significant collateral consequences."

### C. Error Fundamental to the Validity of the Judgment

The wire fraud statute assigns penalties to anyone who,

> having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce,

8

> any writings . . .or sounds for the purpose of executing such
> scheme or artifice. . .

18 U.S.C. § 1343. An essential element of this crime is intent to defraud. The Government must prove that the defendant engaged or participated in a fraudulent scheme with an understanding of its fraudulent or deceptive character and with an intention to be involved in the scheme and to help it succeed with a purpose of causing actual financial harm to another. *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

The conspiracy statute prescribes punishment "[i]f two or more persons conspire . . . to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy..." 18 U.S.C. § 371. An essential element of conspiracy is that the defendant knowingly, willfully, and unlawfully became a member of the conspiracy. Thus, the Government must prove that the defendant joined the conspiracy with an awareness of its illegal aim and purpose and with the specific intent of furthering that purpose. *United States v. Downing*, 297 F.3d 52, 57 (2nd Cir. 2002).

> To prove conspiracy, the government must show the existence
> of an agreement between defendant and another to commit a crime,
> that each defendant knew of the agreement, and that each
> defendant voluntarily participated in the conspiracy through
> conduct that was interdependent with the actions of the other
> conspirators.

*United States v. Gomez-Pabon*, 911 F.2d 847, 852-53 (1st Cir. 1990), *cert. denied*, 498 U.S. 1074 (1991); *U.S. v. Brandon*, 17 F.3d 409, 454 (1st Cir. 1994), *cert. denied*, 513 U.S. 820 (1994) (approving jury instruction that actual proof of knowledge was essential "to insure that no one will be convicted for an act that he or she did not intend to commit or the nature of which he or she did not understand.")

Therefore, it is clear that intent is also an essential element of the conspiracy statute. "The defendants must have both the intent to agree to participate in the conspiracy and an intent to commit the underlying substantive offense." *Gomez-Pabon*, supra, 911 F.2d at 853. "To convict a defendant of wire fraud or conspiracy to commit wire fraud, the government must prove beyond a reasonable doubt that he acted with intent to defraud the alleged victim." *United States v. Callipari*, 368 F.3d 22, 33 (1st Cir. 2004). "[T]he scheme must be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990), *cert. denied*, 498 U.S. 992 (1990) (emphasis in original).

At petitioner's plea hearing, the Assistant U.S. Attorney described the alleged scheme as follows:

> With respect to the scheme, Your Honor, the government's evidence would show that beginning in approximately 1991, Fosher, Corso, DeVito, and Chinn engaged in a series of home invasions and robberies in Massachusetts and elsewhere. On occasion they targeted the homes of persons they believed to be drug dealers so as to minimize the likelihood that their victims would report the crime. In addition, they sought to steal drugs for their own use and for distribution to others.
>
> When they invaded, robbed such houses, they typically pretended to be police officers or law enforcement agents executing a search. On some occasions, they simply advised the victims that they had a warrant or implied that a piece of paper was a warrant.
>
> On two occasions, Your Honor, once in the early 1990's and once in January of 1995, the defendant, Richard George, gave blank warrant forms to Mr. Fosher, knowing that Fosher had no legitimate reason to have such forms. Mr. George did not disclose to the Commonwealth that he had given blank warrant forms to Mr. Fosher.
>
> In giving such forms to Mr. Fosher and in failing to disclose to his employer, the Commonwealth, that he had done so, Mr.

>George knew that he was engaging in a scheme to defraud the Commonwealth of its right to his honest services as First Assistant/Clerk Magistrate.
>
>The government's evidence finally would show, Your Honor, that in execution of this scheme and in furtherance thereof, Mr. Fosher placed the telephone call to Mr. George which is referenced in Paragraph 9 of the Information, that is, he telephoned Mr. George from Pompano Beach, Florida, on or about April 6, 1993.

(Tr. I-27/23)

The scheme to defraud which petitioner was accused of was clearly not simply "a scheme to defraud the Commonwealth of its right to his honest services as First Assistant/Clerk Magistrate." The scheme was the one described above, i.e. a scheme to provide blank search warrants which were to be used by Fosher and others to commit home invasions and robberies. The fundamental error with this guilty plea and conviction is that there was no evidence before the court that petitioner "joined the conspiracy with an awareness of its illegal aim and purpose and with the specific intent of furthering that purpose." *Downing*, supra, 297 F.3d at 57. To the contrary, as set forth <u>ante</u> at I., the government conceded that they could not prove, even by a preponderance of the evidence, that petitioner new that the search warrants would be used to commit home invasions[6] and the government acknowledged its inability to prosecute petitioner in the absence of his plea. (Tr. II-17/9)

There can be no doubt that the government was alleging that petitioner was part of the alleged conspiracy, and that he participated in the alleged home invasion scheme, by providing blank search warrant forms to Fosher. Logic would indicate that petitioner could only defraud the Commonwealth of its right to his honest services if the search warrant forms were to be used for an illegal purpose. If petitioner had provided blank search warrant forms to an

---

[6] Presentence Report, §§ 20, 26.

11

attorney in response to a telephonic request, and if those forms were subsequently used in a continuing legal education program on search and seizure, no one would suggest that petitioner had committed wire fraud or had participated in an illegal conspiracy. It is the *purpose* for which the forms are being used, i.e. the purpose of the conspiracy, petitioner's *knowledge* of that purpose, and petitioner's *intent* to participate in the conspiracy, which create criminal liability. "[K]nowledge and willfulness like all of the other elements of a crime must be established beyond a reasonable doubt." *Brandon*, supra, 17 F.3d at 454.

When a defendant offers a guilty plea, one of the things that the district court must determine is whether there is a factual basis for the defendant's plea. Fed.R.Crim.P. 11 (f).[7] The purpose of this requirement is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Advisory Committee Notes to the 1966 Amendment to Fed.R.Crim.P. 11.

At the time of petitioner's plea, Rule 11(f) stated: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Just as information from a presentence report can be used to establish a factual basis when a judge failed to do so at a change of plea hearing, *U.S. v. Zorrilla*, 982 F.2d 28, 30-31 (1st Cir. 1992), *cert. denied*, 507 U.S. 1012 (1993), information in a presentence report can be used to negate a factual basis. That is precisely what occurred in the instant case. There was significant new information before the court at the sentencing hearing on January 29, 1996, that seriously undercut the factual basis of petitioner's plea. See I., ante.

---

[7] At the time of petitioner's plea the requirement of a factual basis for a plea was set forth in Rule 11(f). It is now included in Rule 11(b)(3).

12

> The court should satisfy itself, by inquiry of the defendant
> or the attorney for the government, *or by examining the
> presentence report,* or otherwise, that the conduct which
> the defendant admits constitutes the offense charged in
> the indictment or information or an offense included
> therein to which the defendant has pleaded guilty. Such
> inquiry should, e.g., protect a defendant who is in the
> position of pleading voluntarily with an understanding
> of the nature of the charge but without realizing that
> his conduct does not actually fall within the charge.

Advisory Committee Notes to the 1966 Amendment to Fed.R.Crim.P. 11. (emphasis added) Rule 11(f) "implies that acceptance of a guilty plea does not foreclose a subsequent rejection of the plea if factual questions emerge, for instance at sentencing." *United States v. Ventura-Cruel,* 982 F.2d 55, 61 (1st Cir. 2003), citing *United States v. Partida-Parra,* 859 F.2d 629, 631 (9th Cir. 1988). Acceptance of a guilty plea which is lacking in a factual basis constitutes a fundamental defect in the plea proceeding. *United States v. McKelvey,* 203 F.3d 66, 72 (1st Cir. 2000).

> Despite the emphasis placed by Rule 11 on advising a defendant
> of foregone trial rights and prospective penalties, most laypersons
> would probably think that a court taking a plea ought to be concerned
> beyond all else with the voluntariness of the plea and the existence
> of a reasonable basis for thinking that the defendant was actually
> guilty. We would view with special concern any defect in the
> proceedings that led us to believe that a plea was coerced or
> that there was no factual basis for the plea.

*United States v. Raineri,* 42 F.3d 36, 45 (1st Cir. 1994), *cert. denied* 515 U.S. 1126 (1995).

### III. REQUEST FOR HEARING

It is submitted that the foregoing points and authorities demonstrate that George's petition and affidavit make out a prima facie case for coram nobis relief. The question then

13

becomes whether the court should conduct a hearing on the petition. In determining procedures to apply in coram nobis proceedings, courts have analogized to habeas corpus petitions. See *United States v. Balistrieri*, 606 F.2d 216, 220-21 (7th Cir. 1979), *cert. denied*, 446 U.S. 917 (1980). "Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions." *Owensby v. United States*, 353 F.2d 412, 417 (10th Cir. 1965), *cert. denied*, 383 U.S. 962 (1966). As in habeas corpus petitions, petitioner should be granted a hearing unless "motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981), *cert. denied* 454 U.S. 866 (1981) (holding that whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions).

> [A] § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.

*United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993). Petitioner has raised serious, substantive issues concerning his guilty plea which are supported by the record and which merit a hearing.

## IV. CONCLUSION

For the foregoing reasons, petitioner submits that he has made out a prima facie case for coram nobis relief and requests that the court set a time for a response by the United States, allow the petitioner to reply to that response within twenty days, and then either grant a hearing on the petition or grant the petition on the pleadings and vacate petitioner's conviction and dismiss the Information.

Dated: October 29, 2004

Respectfully submitted,

RICHARD J. GEORGE

By his attorney,

Bruce T. Macdonald
678 Massachusetts Avenue
Suite 901
Cambridge, MA 02139
(617) 354-1711
BBO #310400