```
                    United States District Court
                      District of Massachusetts
_____
                              )
UNITED STATES OF AMERICA,     )
        Plaintiff,            )
                              )
        v.                    )    Criminal No.
                              )    95-10355-NMG
RICHARD J. GEORGE,            )
        Defendant.            )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

On December 14, 1995, after defendant Richard J. George ("George") waived his right to an indictment, an information was filed and George pled guilty to conspiracy to commit wire fraud by defrauding the Commonwealth of Massachusetts of the intangible right to his honest services, in violation of 18 U.S.C. § 371.

### I. Background

In his role as First Assistant Clerk-Magistrate in the Cambridge Division of the District Court Department of the Massachusetts Trial Court, George had been supplying blank search warrant forms to persons who then used the forms to commit home invasions and robberies. On January 29, 1996, United States District Judge Reginald C. Lindsay sentenced George to a term of 20 months imprisonment, followed by two years of supervised release with conditions, 200 hours of community service, a fine of $10,000 and a $50 mandatory assessment. He completed his

sentence on April 23, 1999.

On October 29, 2004, George filed a motion for a writ of error coram nobis. Judge Lindsay denied that motion on June 16, 2006 because George had failed to show that there was a fundamental legal error in his conviction. United States v. George, 436 F. Supp. 2d 274, 279-80 (D. Mass. 2006). The First Circuit Court of Appeals affirmed that denial. United States v. George, No. 06-2010 (1st Cir. May 11, 2007). On January 18, 2011, George filed a second motion for a writ of error coram nobis which the government opposes.

## II. Legal Analysis

### A. Standard for a Writ of Error Coram Nobis

Pursuant to the All Writs Act, a federal court has the authority to grant a writ of error coram nobis to correct an error that affects the validity and regularity of a judgment. 28 U.S.C. § 1651(a); United States v. Morgan, 346 U.S. 502, 507 (1954); United States v. Sawyer, 239 F.3d 31, 37 (1st Cir. 2001). The writ allows courts to revisit their own judgments on the basis of some "patent error," subject to certain conditions. Trenkler v. United States, 536 F.3d 85, 90, n.2 (1st Cir. 2008). The writ may be employed only by a criminal defendant who is no longer in custody. Id. at 98.

The writ is considered an "extraordinary remedy" allowed "only under circumstances compelling such action to achieve

justice." Sawyer, 239 F.3d at 37 (quoting Morgan, 346 U.S. at 511). In fact, the Supreme Court found it "difficult to conceive of a situation in a federal criminal case today where [a writ of error coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)). At the outset, the Court presumes the validity of the original proceedings, thus delegating the burden of proving otherwise to the petitioner. Morgan, 346 U.S. at 512. For relief under the writ, the petitioner must follow a threefold inquiry:

1) explain his failure to seek relief from judgment earlier;

2) demonstrate continuing collateral consequences from the conviction; and

3 prove that the error is fundamental to the validity of the judgment.

Sawyer, 239 F.3d at 38.

**B. Error Fundamental to the Validity of the Judgment**

With respect to the third prong, George argues that the recent holding of the United States Supreme Court in Skilling v. United States invalidated his conviction because it narrowed the application of the mail fraud statute that he was convicted of violating. 130 S. Ct. 2896 (2010). In 1987, in McNally v. United States, the Supreme Court held that the federal mail fraud statute did not cover schemes to deny the public its right to the honest and impartial services of its government officials. 483

-3-

U.S. 350, 355 (1987). In response to the Supreme Court's decision in McNally, Congress enacted 18 U.S.C. § 1346, which provides that, for the purpose of the mail and wire fraud statute,

> the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services.

Thereafter, the circuit courts were divided on the question of whether § 1346 was intended to reinstate the pre-McNally case law holding that the mail fraud statute reached schemes to defraud individuals of the right to honest services of government officials. See Skilling, 130 S. Ct. at 2928. The First Circuit held that it did. Sawyer, 85 F.3d at 723-24. On June 24, 2010, however, in Skilling, the Supreme Court narrowed the reach of § 1346 by holding that it "criminalizes *only* the bribe and kickback core of the pre-McNally case law." 130 S. Ct. at 2931 (emphasis in original). George maintains that his conviction was, therefore, for the commission of an act that is no longer criminal.

Certainly, if a conviction was based upon conduct that is not sanctioned by a criminal statute, that is a fundamental error. United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988) (citing Davis v. United States, 417 U.S. 333, 346-47 (1974)). Because the offense for which George was convicted did not involve bribery or kickbacks, George makes a compelling

-4-

argument for the existence of an error fundamental to the validity of his conviction.[1]  Furthermore, George's failure to challenge his conviction on that basis at an earlier time is excusable due to the fact that the Skilling decision was not rendered until June, 2010.

**C.  Continuing Collateral Consequences**

Respondent proffers that, even if the Court assumes that the first and third factors are fulfilled in light of Skilling, Petitioner fails to demonstrate a significant, continuing collateral consequence.  In Skilling, the Supreme Court did not address what constitutes a continuing collateral consequence for the purpose of coram nobis relief.  Moreover, in his opinion on George's first motion for a writ of error coram nobis, Judge Lindsay did not address whether George had pled a cognizable continuing collateral consequence of his conviction.  George, 436 F. Supp. 2d 274.

George claims that his conviction inflicted the continuing collateral consequence of suspension of his state pension by the State Board of Retirement, which could not have been foreseen at

---

[1]  George also maintains that his guilty plea suffered from a fundamental defect because the government conceded at the Rule 11 hearing that it could not prove that he knew that the blank search warrants in question would be used to commit home invasions.  Judge Lindsay addressed that issue in 2006, however, and held that there was no fundamental error.  George, 436 F. Supp. 2d at 279-80.  The First Circuit affirmed that decision. George, No. 06-2010 (1st Cir. May 11, 2007).

the time of his plea.  According to George, his attorney spoke to someone at the State Board of Retirement who informed him that if George obtained his retirement pension before he pled guilty, it would be vested.  On January 1, 2003, however, George was notified that his pension benefits were suspended as a result of his conviction.  On March 26, 2008, his pension benefits were terminated.  George claims that he would not have pled guilty had he known that his state pension benefits would be terminated.

   The question of whether the loss of pension benefits constitutes a significant, continuing collateral consequence justifying coram nobis relief is an issue of first impression in the First Circuit.  There are a number of analogous cases in other circuits.  Most on point is United States v. Craig, in which the Seventh Circuit Court of Appeals held that the revocation of the pension benefits of two public officials did not constitute a significant, continuing collateral consequence for the purposes of coram nobis relief because the petitioners were refunded their contributions to the pension fund and then removed from the pension plan.  907 F.2d 653, 660 (7th Cir. 1990).  The Court reasoned that the removal "occurred entirely in the past" and was, therefore, "a sunk cost, much like a criminal fine."  Id.  In contrast, in United States v. Osser, the Third Circuit Court of Appeals assumed, but did not hold, that the loss of a city pension due to a conviction constituted a cognizable

collateral consequence.  864 F.2d at 1060.

The Court is persuaded by the holding in Craig.  See 907 F.2d at 660.  In that case, the Seventh Circuit Court of Appeals actually held that the loss of pension benefits does not constitute a continuing collateral consequence of a conviction.  Id.  The Third Circuit Court of Appeals' statement in Osser was merely dicta and was not accompanied by any analysis.  See 864 F.2d at 1060.

In somewhat analogous situations, two courts have addressed whether the loss of an occupational license constitutes a cognizable collateral consequence.  In United States v. Foont, the court held that the fact that a federal securities statute barred the petitioner from returning to work as a securities trader and broker constituted the kind of continuing legal consequence that justifies coram nobis relief.  901 F. Supp. 729, 734 (S.D.N.Y. 1995).  Similarly, in United States v. Keane, the Court stated that disbarment after conviction is "the sort of civil disability [that] could support the issuance of the writ."  852 F.2d 199, 203 (7th Cir. 1988).

Nevertheless, courts in this circuit have held that financial obligations resulting from a conviction are not significant enough to warrant coram nobis relief.  United States v. Mirza, Crim. No. 08-10149, 2010 WL 5174496, at *3 (D. Mass. Dec. 17, 2010); United States v. Cruzado-Laureano, Crim. No.

01-690, 2010 WL 4340987, at *4 (D.P.R. Nov. 2, 2010). This Court is convinced by the logic of the Seventh Circuit in <u>Craig</u> that the loss of pension benefits is more analogous to the imposition of a criminal fine or restitution than to the loss of an occupational license. <u>See</u> 907 F.2d at 660. As such, the Court concludes that the loss of pension benefits does not carry the gravity required for <u>coram nobis</u> relief. <u>See</u> <u>Sawyer</u>, 239 F.3d at 37 (<u>coram nobis</u> relief is an "extraordinary remedy").

### ORDER

In accordance with the foregoing, George's motion for a writ of error <u>coram nobis</u> (Docket No. 38) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 30, 2011